IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES R. WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4103-CV-C-NKL |
| | ) | |
| BOARD OF TRUSTEES OF SHEET | ) | |
| METAL WORKERS' NATIONAL | ) | |
| PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is the Motion for Summary Judgment [Doc. # 20] filed by the Board of Trustees of Sheet Metal Workers' National Pension Fund ("the Fund") and James Walters's Motion for Summary Judgment [Doc. # 16]. For the reasons set forth below, the Court grants the Fund's Motion and denies Walters's Motion.

**I.     Background**

**A.     The Fund's Pension Plan**

The Fund is a multiemployer pension plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Fund adopted a Pension Plan in 1966 that governs this dispute. In the Pension Plan, "The term 'covered employee' shall not include any self-employed person or any person who is an employer or an

1

officer or director of a corporation." A.R. at p. 119.[1] Only covered employees earned pension credits for purposes of accruing benefits under the Fund. *Id.* at 126. To obtain a vested interest in retirement benefits, an employee must have fifteen years of service, with at least five of those years being for future service. *Id.* at 127. If a covered employee incurred a break in service, then the employee's pension benefits were cancelled. *Id.* at 126. A break in service occurred where the employee "fail[ed] to earn at least six months future service credit in any period of three consecutive calendar years." *Id.*

According to the Pension Plan, Trustees have the sole discretion to interpret the Pension Plan, credit service, and determine who is entitled to a pension. A.R. at p. 134. An employee may appeal the Trustees' decision to the Appeals Committee. If the employee is dissatisfied with the decision of the Appeals Committee, then the employee has ninety (90) days from the date he receives notice of the decision to file suit under ERISA.

### B. Watlers's Employment History and the Parties' Dispute

#### 1. *Early History*

It is undisputed that Walters engaged in covered employment from 1962 to 1971. He was credited with ten years of service, seven years of which were for future service. In 1972, Walters began working as an employee-owner of Major Sheet Metal ("Major"). A.R. at p. 14. Because Walters was self-employed, he was no longer a covered

---

[1]The citation is to the Administrative Record.

2

employee and he did not accumulate years of service. Nonetheless, Major continued to make contributions to the Fund on behalf of Walters from 1972 through 1982 in the amount of $15,153.56.

In September 1983, Walters submitted a vesting application to the Fund wherein he sought to have his rights vested. In October 1983, the Fund notified Walters that Major had erroneously been making contributions on behalf of employees that were not subject to a collective bargaining agreement and who were not covered employees. A.R. at p. 61. The Fund advised Walters that if employees who were not subject to a collective bargaining agreement wanted to participate in the Fund, then Major could submit a Special Class application on their behalf. Alternatively, Major could request a refund of its erroneous contributions.

Major submitted a Special Class application on behalf of Walters to allow him to participate in the Fund. Initially, the Fund notified Major that its application had been accepted. A.R. at p. 62.

However, in December 1983, the Fund withdrew its approval and rejected Major's Special Class application because it had not been signed by a representative of the Local Union No. 2 of the Sheet Metal Workers International Association ("the Local"). A.R. at p. 6. According to the Pension Plan, a Special Class could not be approved unless it was jointly submitted by the respective local union and the employer. Because the Local had not signed off on Major's Special Class application, it could not be approved by the Fund. The December 1983 correspondence again advised Major to request return of its

3

erroneous contributions. It also advised Major that it would reconsider the Special Class application if the Local signed it.

By letter dated June 5, 1984, the Fund notified Walters that he would not be entitled to benefits because he was not vested under the Pension Plan. A.R. at pp. 3-4. Because he was self-empoyed, Walters was not entitled to credit after 1971. Walters's service prior to 1971 was insufficient to vest because he had obtained only ten years of service--not the requisite fifteen years that the Pension Plan required. The correspondence also notified Walters that he had incurred a break in service because he had failed to earn at least six months future service credit in a period of three consecutive calendar years. The June 1984 letter again advised Walters that he could seek a refund of the erroneous contributions.

Subsequently in June 1984, Walters requested that the Fund approve his Special Class application without the approval of the Local. A.R. at p. 59. Walters stated that the Local's agent refused to sign the Special Class application. There is no record of return correspondence to Walters.

Eventually, the Fund removed Walters's hours from the Fund. The erroneous contributions submitted by Major on Walters's behalf were reallocated to satisfy delinquent contributions owed by Major. A.R. at pp. 48 and 73.

### 2. *Recent Occurrences*

Walters did not contact the Fund again until 2003. In February 2003, Walters submitted another vesting application to the Fund. A.R. at pp. 26-32. In his application,

Walters stated that his dates of employment were June 1962 to September 1982. The Fund notified Walters that it was rejecting his vesting application on the same bases as those set out in its June 1984 correspondence. A.R. at p. 42. The Fund included a copy of its earlier letter.

In March 2003, the Fund notified Walters that in 1982 it had taken a judgment against Major for its failure to submit its contributions on behalf of its covered employees. A.R. at p. 44. The March 2003 letter also described Walters's appeal rights.

Walters submitted a May 2003 letter wherein he stated that he was appealing the determination regarding his vested status. A.R. at p. 45. He did not submit any evidence in support of his appeal. The Fund notified him that the Appeal Committee would take up his appeal at its meeting in late June 2003.

At its meeting, the Fund's Appeal Committee considered Walters's appeal and rejected his claim. A.R. at pp. 138-41. By letter dated June 27, 2003, the Fund notified Walters of the Appeal Committee's decision. A.R. at pp. 38-39. The letter was sent via certified mail, return receipt requested, and it notified Walters of the 90-day time limitation for commencing his suit.

In mid-July 2003, Walters's counsel contacted the Fund and requested the documentation and application file for Walters's request. The Fund sent the requested materials on July 24, 2003.

### C.     Walters's Claim

Walters filed his pending Complaint on April 1, 2005. In his Complaint, Walters

alleges that he is entitled to his pension under the terms of the Pension Plan.

**II.    Discussion**

      **A.    Walters's Claim Is Not Timely**

A claim under ERISA for benefits is treated as a contract action for statute of limitation purposes. Federal law controls when the cause of action accrues. *See Bennett v. Federal Mutual Insurance Company*, 141 F.3d 837 (8th Cir. 1998) (citations omitted). The Eighth Circuit has held that Missouri's ten-year statute of limitations for contract actions applies to ERISA claims that originate within that state. *Harris v. The Epoch Group, L.C.*, 357 F.3d 822 (8th Cir. 2004) (applying Mo. Rev. Stat. § 516.110 to ERISA claims) (reaffirming and citing *Johnson v. State Mut. Life Assurance Co. of America*, 942 F.2d 1260, 1266 (8th Cir. 1991) (en banc)).

In *Union Pacific Railroad Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998), the Eighth Circuit held that a claim for benefits under ERISA accrues (1) when a claim for benefits is made and is formally denied, or (2) even before a formal denial where "there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary." *Id.* at 330 (citation omitted).

The Fund argues that Walters's claim under ERISA began to accrue when it notified him in 1984 that it was denying his application for vested benefits. The Court agrees. The June 5, 1984, letter from the Fund to Walters notified him that he was not vested, he had not worked as a covered employee since 1971, and he had experienced a substantial break in service. A.R. at pp. 3-4. The letter clearly put Walters on notice that

6

it was the final determination of the Fund. In fact, when Walters contacted the Fund again in 2003, the Fund referred back to its June 1984 letter as evidence that it had already denied his claim and that the factual circumstances had not changed since then. A.R. at p. 42.

Walters's own conduct reflects that he considered the 1984 letter to be a final determination of his rights, because until 2003, he did not seek to collect his benefits or pursue any other administrative remedies against the Fund.

Walters's claim against the Fund began to run in June 1984 when he received notice that he had no rights in the pension. Applying Missouri's ten-year statute of limitation for contract actions, Walters's claim expired in 1994, long before he filed this action in April 2005. Walters's claim is clearly outside the applicable statute of limitations.

*Bennett* involved a similar situation. The employee resigned his position and forfeited, as of that date, his rights in the company's benefit plan. The same day, the employee received a letter stating that he was forfeiting his rights. *Bennett*, 141 F.3d at 839. The Eighth Circuit held that this was sufficient notice to begin the accrual of the statute of limitations for purposes of the employee's ERISA claim. *Id.*

Like the employee in *Bennett*, Walters was notified that the Fund had made a final determination of his rights and the statute of limitations began to accrue as of that date. The only debatable issue is whether the Fund waived the statute of limitations by rejected his claim again and giving him a right to appeal. By that time, however, the claim was

7

extinguished and there is no suggestion in the record that the Fund intended to permit Walters to revive it. Notifying him that they had already rejected his claim in 1984 does not constitute a waiver of the statute of limitations.

**B. Walters's Claim Fails On the Merits**

Even assuming Walters's claims were timely, there is no substantive basis for finding in his favor. He does not satisfy the clear requirements of the Plan, and there is no basis for finding that the Fund misrepresented facts to Walters.

While the Fund incorrectly received funds from Walters from 1972 through 1982, it promptly notified him of the error in October 1983 after Walters filed a vesting application. A.R. at p. 61. Also, there is no evidence that the Fund knew it was wrongfully collecting funds from Walters or that it attempted to conceal that fact from Walters.

To the contrary, the evidence reflects that the Fund notified Walters immediately after the error came to its attention. In its subsequent correspondence over the next year, the Fund advised Walters that he could seek a reimbursement for the wrongfully collected funds, but there is no evidence that Walters invoked this remedy. A.R. at pp. 61, 3-4.

The material facts of this case are undisputed and this Court cannot conclude that the Fund acted inappropriately or wrongfully in any way. It appears that the Fund gave Walters every opportunity to recoup his submitted funds, but that he declined to do so. It also appears that the Fund did not experience a windfall as the funds were used to pay off the obligations owed by Walters's company. Accordingly, Walters's claim fails on its

merits and his Motion is denied.

## III. Conclusion

Accordingly, it is hereby

(1) ORDERED that the Fund's Motion for Summary Judgment [Doc. # 20] is GRANTED, and

(2) ORDERED that Walters's Motion for Summary Judgment [Doc. # 16] is DENIED.

      s/ NANETTE K. LAUGHREY
      NANETTE K. LAUGHREY
      United States District Judge

DATE: May 5, 2006
Jefferson City, Missouri